1
2  **EYMANN ALLISON HUNTER JONES, PS**
   By: Richard C. Eymann, WSBA #7470
   2208 W. 2nd Avenue
3  Spokane, WA 99201
4  (509) 747-0101 Phone / (509) 568-5977 Fax
   eymann@eahjlaw.com
5
   **LOWTHORP, RICHARDS, McMILLAN,**
6  **MILLER & TEMPLEMAN**
   John H. Howard, Bar #91027
7  300 Esplanade Drive, Suite 850, Oxnard, California  93036
   (805) 981-8555 Phone / (805) 983-1967 Fax
8  jhoward@lrmmt.com
9
10 Attorneys for Plaintiffs
11
                    **UNITED STATES DISTRICT COURT**
12                  **EASTERN DISTRICT OF WASHINGTON**
13
14 ERIC WRIGHT, INDIVIDUALLY         No. 2:15-cv-00305-TOR
   AND IN HIS CAPACITY AS
15 PERSONAL REPRESENTATIVE           DECLARATION OF
   OF THE ESTATE OF STEVEN O.        BRUCE WAPEN, M.D. IN
16 WRIGHT; AND, AMY SHARP,           OPPOSITION TO UNITED
                                     STATES' MOTION FOR
17 INDIVIDUALLY,                     SUMMARY JUDGMENT
18                  Plaintiffs,
19 v.
20 THE UNITED STATES OF
   AMERICA; MEDFORD
21 CASHION, M.D.; STAFF CARE,
22 INC.,
23                  Defendants.
24
25
26

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 1

BRUCE WAPEN, M.D. swears under penalty of perjury as follows:

1.   I am over the age of 18 years and competent to testify to the matters stated herein, and I make this Declaration based on personal knowledge.

2.   I have practiced emergency medicine for 37-years (1976 through 2013) and have been board certified in emergency medicine for 30-years (1984 through 2014). I am licensed to practice medicine in the States of California & Washington. I am familiar with the standard of care for emergency physicians and have qualified as an expert witness in emergency medicine at trials in the States of California, Alaska, Idaho, Michigan, Arizona, New Mexico and Nevada. The opinions expressed in this report are based on knowledge obtained through my education, training and experience as well as from research specific to this case.

3.   I have been retained by counsel for Plaintiff to render opinions regarding the medical management of Steven O. Wright in the Emergency Department (ED) at the Veteran Affairs Medical Center in Spokane, WA on 2 August 2014. At the time of this event, I had been retired from the active practice of emergency medicine for 8-months; but I was still board certified in emergency medicine.

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

1    4.    In preparing this Declaration, I have reviewed the following

2   documents:

3       -Veteran Affairs Medical Center ED records 8-2-14, visits # 1 & #2

4       -Certificate of Death 8-11-14

5

6       -Autopsy Report 8-12-14

7       -Institutional Disclosure of Adverse Event 8-12-14

8       -Plaintiff's Initial Discovery 2-26-16

9

10      -Depositions of: Medford Cashion, MD; Shea McManus, MD; Karla

11      Linton, LPN; Robert Ready, RN; Jill Palmer, RN; Kimberly Morris, MD;

12
        Elizabeth Whitley Ford, RN; and Matthew Haugen, RN
13

14      5.    In preparing this report, I have researched information from the

15   following sources:

16      -ACEP Clinical Policy: Neuroimaging and Decision Making in Adult Mild
17      Traumatic Brain Injury in the Acute Setting, *Annals of Emergency*
18      *Medicine,* Volume 52, No. 6: pages 714-727, December 2008.

19      -David W. Wright & Lisa H. Merk, *"Head Trauma in Adults and*
        *Children,"* Tintinalli's Emergency Medicine: A comprehensive Study
20      Guide - 7th Edition, pages 1692-1709, 2011.

21      -Karni A, Holtzman R, Bass T, et al: Traumatic head injury in the
22      anticoagulated elderly patient: a lethal combination, *Am Surg* 67(11): 1098,
        2001.

23      -Mina AA, Knipfer JF, Park DY, et al: Intracranial complication of
24      preinjury anticoagulation in trauma patients with head injury, *J Trauma*
        53(4): 668, 2002.
25
        -Cohen DB, Rinker C, Wilberger JE: Traumatic brain injury in
26      anticoagulated patients, *J Trauma* 60(3), 553, 2006.

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 3

**EYMANN ALLISON HUNTER JONES P.S.**
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

-Mack L, Chan S, Silva J, et al: The use of head computed tomography in elderly patients sustaining minor head trauma, *J Emerg Med* 24:157-162, 2003.

-Ohm C, Mina A, Howells G, et al: Effects of antiplatelet agents on outcomes for elderly patients with traumatic intracranial hemorrhage. *J Trauma* 58: 518-522, 2005.

## I. Factual Summary of Events

6.      Steven O. Wright ("SW"), a 70-year-old male, presented to the Spokane, WA Veteran Affairs Medical Center ED accompanied by a friend at about 11:00am on 8-2-14. SW complained of a left knee injury secondary to a fall down two steps on 7-27-14. He had been using crutches to help him walk but complained of pain, swelling and bruising in this left leg. He was evaluated by Dr. Shea McManus. The left leg displayed swelling and purplish discoloration from the distal thigh to the foot with "severe anasarca/edema," but no such swelling of the right leg or scrotum was noted. (Anasarca: generalized massive edema [Dorland's Illustrated Medical Dictionary - 30th Edition])

7.      It was documented that SW was taking the anticoagulant warfarin (Coumadin) for treatment of chronic atrial fibrillation (A-fib) as well as a baby aspirin a day (both are blood-thinners, but aspirin is classified as an antiplatelet agent, not an anticoagulant). An INR was ordered to measure his anticoagulation status. His INR was elevated at 1.5, which is compatible with taking warfarin; but that level is not in the fully therapeutic range for the treatment of A-fib. An

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

EKG showed A-fib but was negative for acute findings. Tibia/fibula x-rays of the left leg were obtained which did not show evidence of an acute fracture but were read as showing "Diffuse [left] lower extremity edema ..." A chest x-ray showed mild prominence of the central vasculature *without* overt changes of pulmonary edema. At 1:00pm, SW was given Lasix 80mg orally for his edema, and he put out 700ml of urine by 3:30pm. At 3:35pm, SW was given warfarin 5mg orally plus a second anticoagulant, enoxaparin (low-molecular weight heparin – tradename Lovenox), which was given as a 100mg subcutaneous injection.

8.    A Doppler ultrasound (U/S) of the left leg to rule-out deep vein thrombosis (DVT) could not be done at the VA Medical Center, and SW was sent to Holy Family Hospital (HFH) by ambulance to have that test done at 5:40pm. The injection of enoxaparin, noted above, was given as prophylaxis for possible DVT pending the results of the U/S. At 6:03pm, Dr. McManus went off-shift and turned the care of SW over to Dr. Medford Cashion. In his deposition, Dr. McManus stated that he had intended to admit SW to the hospital regardless of the U/S findings; and he communicated that intent to Dr. Cashion. (McManus Depo 43:20 – 44:21)

9.    SW returned to the VA Medical Center at 6:45pm, and the records do not indicate that a DVT was found. Dr. Cashion's diagnostic impression was:

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

1    "Strain and contusion left knee." Dr. Cashion noted that SW had crutches with
2    him and had a knee immobilizer at home. In the ED, SW was able to walk using
3    only one crutch. SW was discharged from the ED with instructions to use his
4    crutches and knee immobilizer, and he was given a referral to follow-up in the
5    orthopedic clinic. He left the ED at approximately 8:05pm. (VAMC pg. 41).
6
7
8         10.    After leaving the ED but while still in the hospital parking lot, SW
9    had an unwitnessed fall. Matthew Haugen, RN was just leaving the hospital after
10   having finished his day shift. He did not see SW fall but noticed him standing by
11   a wheelchair rack some distance from the hospital doors. Nurse Haugen
12   remembered that SW "was just standing there," "seemed unclear about his
13   situation," and "implied that he was driving [that is, that he would be driving
14   himself home from the parking lot]." (Haugen Depo 11:16 – 12:20) Nurse
15   Haugen felt that SW was "alert" and did not feel that he appeared "dazed"
16   (Haugen Depo 12:25 – 13:4); instead, he described SW as being "stalled."
17   (Haugen Depo 25:5-14) Nurse Haugen put SW in a wheelchair, wheeled him
18   back into the ED, and presented him to the triage nurse to be cared for.
19
20        11.    Elizabeth Whitley-Ford, RN was the triage and charge nurse that
21   evening. She did not document and does not remember her conversation with
22   Nurse Haugen. (Whitley-Ford Depo 22:4-15) Her "Chief Complaint" triage note
23
24
25
26

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 6

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

was time-stamped 8:50pm on 8-2-14. It stated: "Pt dc'd home, was walking out to POV with ride home on crutches, lost footing and fell forward into bike rack [sic], going between bars and hitting head on ground. Lacerations, skin abrasions to rt [sic] forehead, bump to rt [sic] forehead. No LOC, minimal bleeding to forehead. Pt alert and oriented, denis [sic] pain, just scrape to head, requesting to go home now."

12. Nurse Whitley-Ford's physical assessment documented that SW was "alert and oriented X 3," that his eyes showed "PERRL," and that the forehead displayed "abrasion tort [sic] forehead, bump tort [sic] forehead." That note was entered into and/or signed in the computerized patient record system (CPRS) at 11:18pm.

13. SW was seen, again, by Dr. Cashion who documented this history at 8:43pm: "70m c/o head injury. He was discharged from this ER, and was using his crutches, when he fell into the bike rack [sic] out in our parking lot having tripped. A witness says his head went through the bike rack. Pt states his head hit the pavement but he wasn't knocked out. He has no headache and no neck or back pain, in fact no new pain." Dr. Cashion did not mention the presence or absence of an alteration in mental state (i.e. feeling dazed, disoriented or confused), amnesia, or other signs of concussion while SW was still in the

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

parking lot immediately following the blow to the head. The physical examination in the ED revealed a "3x4 cm fresh abrasion, mild swelling left upper forehead," and the neurologic exam was normal with "Mental status normal for age; PERRL, moving all 4 extr well." Interestingly, the extremities were now documented as showing "no sign injury."

14.    Dr. Cashion's diagnostic impression was "Head injury, without concussion, contusion forehead, on warfarin" (Spokane VAMC pg. 16)[1], and his "Assessment & Plan" were "Abrasion and contusion forehead, without concussion, on warfarin, today's INR 1.5. Pt and friend comfortable with home observation. Instruction sheet. Followup urgent care Aug 4." (Spokane VAMC pg. 25) That instruction sheet, however, is not in evidence as part of the medical records; and Nurse Whitley-Ford cannot recall talking to SW about the risks of bleeding into his head. (Whitley-Ford Depo 74:18 – 75:24) SW was given a tetanus booster on re-admission to the ED at 8:50pm; and he was discharged from the ED sometime around 11:00pm, although the precise time of discharge was not recorded.

15.    SW was found lifeless in his bathtub on the morning of 8-3-14. An autopsy was performed by Jeffrey M. Reynolds, MD on 8-7-14. He found:

---

[1] Excerpts from the medical records referenced in this Declaration are attached as Exhibit "A" to the Declaration of Richard C. Eymann.

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 8

**EYMANN ALLISON HUNTER JONES P.S.**
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

"Superficial abrasion is present on the left frontal scalp, measuring 2 x 4 cm. Only mild swelling present in this area ... No damage to the scalp is visible or palpable." (Autopsy Report pg. 2) "No other evidence of head trauma is present." (Autopsy Report pg. 4) However, once the skull was opened, Dr. Reynolds found that "...a large (198 cc) subdural hematoma is present on the right with an obvious left shift of the brain and pressure phenomena affecting the right frontoparietal region." His final pathologic diagnoses included "Large, acute right frontoparietal subdural hematoma," and the Cause of Death was listed as "Acute subdural hematoma secondary to fall and anticoagulation." A Certificate of Death was completed by the coroner, Peter J. Martin, on 8-11-14 and reflected the findings noted at autopsy with the exception that the Certificate of Death listed the time of death as 12: 30am on 8-3-14, and the Autopsy Report listed the time of death as 9:30am on 8-3-14.

## II. Standard of Care

16.    One of the issues in this case is the degree of head and/or brain injury that SW suffered. The American College of Emergency Physicians (ACEP) 2008 Clinical Policy: Neuroimaging and Decision Making in Adult Mild Traumatic Brain Injury [TBI] in the Acute Setting makes this enlightening comment (see referenced article, page 715): "Terms used have included

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 9

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

1  "concussion," mild "TBI," "class I TBI," and "low-risk TBI." Even terms "head"

2
3  and "brain" have been used interchangeably. Head injury and TBI are 2 distinct

4  entities that are often, but not necessarily, related. A head injury is best defined as

5  an injury that is clinically evident on physical examination and is recognized by

6
7  the presence of ecchymosis, lacerations, deformities, or cerebrospinal fluid

8  leakage. A traumatic brain injury refers specifically to an injury to the brain itself

9  and is not always clinically evident; if unrecognized, it may result in an adverse

10
   outcome."

11

12     17.    The commonly used term "concussion" (synonymous with mild

13  TBI) is best described as an alteration in mental state (i.e. feeling dazed,

14
15  disoriented or confused up to and including a transient loss of consciousness)

16  associated with trauma to the head with or without amnesia of the traumatic event

17  and events immediately preceding and/or following the injury. One does not have

18
19  to lose consciousness to qualify as having suffered a concussion type TBI.

20     18.    It is clear from Nurse Whitley-Ford's and Dr. Cashion's notes that

21  SW had head trauma that resulted in visible, external injuries to his forehead. The

22
23  question as to whether or not he had brain injury should have been assessed via:

24  1) a probing History of the Present Illness (HPI), 2) a thorough neurologic

25  Physical Examination (PE), and 3) brain imaging if indicated.

26

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 10

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

19.    The HPI should have included SW's answers to questions such as: Did you feel dazed, disoriented or confused after hitting your head? Did you see stars or lights? Do you remember what made you fall [immediate pre-event memory vs. amnesia]? Do you remember hitting your head [memory of vs. amnesia for the event]? Do you remember how you got up from the fall [immediate post-event memory vs. amnesia]? The chart documents that SW was alert and oriented at the time of his re-admission to the ED, but it does not appear that either Nurse Whitley-Ford or Dr. Cashion asked the questions noted above other than Nurse Whitley-Ford's reporting that SW "lost footing" and Dr. Cashion's note regarding SW's "having tripped." No one charted Nurse Haugen's impressions that SW was just standing there as though he were stalled, that he seemed unclear about his situation, or that he seemed confused about who was to drive him home. Without asking all of the questions noted above and assessing the answers, no medical provider could know whether this visible, external forehead injury caused a concussion/mild TBI or not. Failing to ask those questions and record the answers was below the standard of care in emergency medicine.

20.    The neurologic examinations that were performed by Nurse Whitley-Ford and Dr. Cashion were adequate with Nurse Whitley-Ford's exam

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

1  (the better of the two) documenting that SW could move against gravity and had

2

3  normal grips and ability to push his feet [against resistance?] in addition to his

4  being A&O x 3 with PERRLA. What is conspicuously missing from each of their

5  PEs is a Glasgow Coma Scale (GCS) score. However, from the exams that are

6

7  documented regarding SW's mental status once he was back in the ED, it is likely

8  that his score was normal at 15.

9    21.   That leaves us with the third component of assessment - imaging.

10

11 Mild TBIs associated with findings such as a GCS of 15, no focal neurologic

12 deficit, and no protracted vomiting do not usually require imaging *unless* the

13 patient is over 60-years-of-age or has a coagulopathy (alteration of normal

14

15 clotting as in someone who is taking warfarin, aspirin, and has recently been

16 injected with enoxaparin). Under those circumstances, as noted on page 718 of

17 the 2008 ACEP Clinical Policy: Neuroimaging and Decision Making in Adult

18

19 Mild Traumatic Brain Injury in the Acute Setting, a noncontrast head CT is

20 indicated as a Level A recommendation (Level A recommendations are

21 "Generally accepted principles for patient management that reflect a high degree

22

23 of clinical certainty (ie, based on strength of evidence Class I or overwhelming

24 evidence from strength of evidence Class II studies that directly address all of the

25 issues." - ACEP Policy page 717).

26

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 12

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

22.   This mandate is reinforced by the findings of a 2003 study published in *The Journal of Emergency Medicine* (see reference above) that clinical findings (signs and symptoms) *cannot* reliably identify those patients with an intracranial injury (ICI) secondary to minor head trauma (MHT). That study noted: "Only 1 of 13 signs and symptoms correlated with ICI. In this study, no useful clinical predictors of intracranial injury in elderly patients with MHT were found. Current protocols based on clinical findings may miss 30% of elderly ICI patients. Head CT scan is recommended on all elderly patients with MHT."

23.   Treatment with enoxaparin, an anticoagulant, is a risk factor for intracranial hemorrhage with minor head trauma in addition to the risks from being anticoagulated with warfarin and having platelet function inhibited by aspirin. From a 2002 study published in *The Journal of Trauma* (see reference above): "These data indicate that the trauma patient with preinjury anticoagulation such as warfarin or even aspirin who has an intracranial injury has a four-to-fivefold higher risk of death than the nonanticoagulated patient."

24.   Clearly, then, a CT scan of the head/brain was required in this patient, and Nurse Whitley-Ford noted SW should have had a CT scan of his head that night. (Whitley-Ford Depo 53:18 – 56:5) It is my opinion that a head CT would have shown evidence of an intracranial hemorrhage in progress.

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

Failure to order a head CT was below the standard of care in emergency medicine.

25.   As already noted, Dr. Shea McManus thought that SW was ill enough that he ought to be admitted to the hospital even if the Doppler ultrasound of the leg were negative for DVT, which it was. Now, add to SW's baseline infirmities a fall that results in head trauma when he is already anticoagulated with two potent, pharmacologic agents plus aspirin. As noted above, it is my opinion that a head CT would have shown evidence of an early intracranial hemorrhage, which would have mandated neurosurgical consultation and admission/transfer. However, even if a CT scan done immediately after the head injury were not yet positive for the intracranial hemorrhage that killed him, SW still should have been admitted for observation.

26.   As noted in the 2001 presentation to the *Annual Meeting of the Southeastern Surgical Congress* (see reference above): "In our experience treating the elderly anticoagulated trauma patient we have developed several practical guidelines to facilitate the acute care of these patients. All patients over age 65 who are on oral anticoagulation therapy are admitted and undergo head CT scanning even after an apparently minor head injury." And, in her deposition, Nurse Whitley-Ford said that she thought SW should have been admitted for

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

overnight observation. (Whitney-Ford Depo 62:24) Dr. Cashion's failure to arrange for SW to be admitted to the hospital was below the standard of care in emergency medicine.

### III. Causation

27.    Per the Autopsy Report, SW's cause of death was "Acute subdural hematoma secondary to fall and anticoagulation." It is more probable than not that a head CT done at the time of the second ED visit would have shown an intracranial hemorrhage in progress. The causation question arises, then, "Could treatment have been rendered that would have prevented this awake and oriented individual from going on to die from his intracranial hemorrhage?" The answers involve dealing with the anticoagulation effects of warfarin and enoxaparin (aspirin's effect cannot be reversed) and employing neurosurgical intervention, should that treatment modality become indicated.

28.    There are many different, life-threatening, bleeding emergencies exacerbated by the presence of anticoagulants; and those patients are routinely saved from exsanguination by the reversal of the effects of the blood-thinning agents. Warfarin can be reversed with a combination of vitamin K and either fresh frozen plasma (FFP) or prothrombin complex concentrate (PCC). Compared to warfarin, enoxaparin has a relatively short half-life of only 4.5-

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

1  hours. If it needs to be reversed immediately, that can be partially accomplished

2  with protamine sulfate; but even if nothing is done to reverse enoxaparin, it's

3

4  effect rapidly wears off. Reversing the effects of warfarin and enoxaparin would

5  have decreased SW's tendency to continue bleeding.

6

7      29.    As previously noted, SW's acute subdural hematoma (brain bleed)

8  should have been imaged with CT scanning, and SW should have been admitted

9  to the hospital to the service of a neurosurgeon or transferred to another hospital

10
   that had neurosurgical capability. In my experience, neurosurgical management
11

12  of an acute subdural hematoma is usually successful in saving the patient's life

13  and preserving brain function. If bleeding stops before neurologic symptoms

14
   develop, no surgical intervention is required. If the hematoma becomes large
15

16  enough to cause neurologic symptoms, the hematoma can be drained via a burr-

17  hole in the skull. If that is not feasible or effective, the bleeding can be addressed

18
   in the operating room via a formal craniotomy.
19

20      30.    It is more probable than not that reversing the anticoagulation effects

21  of warfarin and enoxaparin along with appropriate neurosurgical intervention as

22
   needed would have prevented SW's death from his intracranial hemorrhage.
23

24  Failure to elicit an appropriate HPI and perform a head CT caused Dr. Cashion to

25  miss the brain bleed. Failure to admit SW to the hospital, even in the absence of

26

DECLARATION OF BRUCE WAPEN, M.D. IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 16

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

positive CT findings, obviated the chance to employ medical observation as a means of spotting SW's deterioration while there was still time to remediate it. Dr. Cashion's failures to meet the standard of care at all of these levels caused or significantly contributed to SW's death from brain hemorrhage.

### IV. Standard of Care Opinion

31.    Based on a reasonable degree of medical certainty and on a more probable than not basis, my opinion is that Dr. Medford Cashion fell below the standard of care in emergency medicine for the following reasons:

a. Failure to take an adequate History of the Present Illness;

b. Failure to order a head CT;

c. Failure to diagnose the intracranial hemorrhage; and

d. Failure to arrange for Mr. Wright to be admitted to the hospital.

### V. Causation Opinion

32.    Based on a reasonable degree of medical certainty and on a more probable than not basis, my opinion is that Dr. Medford Cashion's failures to meet the standard of care in emergency medicine, as described and itemized above, caused Mr. Wright to be sent home from the ED with an unrecognized intracranial hemorrhage in progress, which caused his death.

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

1        I declare under penalty of perjury under the laws of the United States that

2    the foregoing is true and correct.

3

4        DATED this 3rd day of May, 2017, at Foster City, California.

5

6

7                Bruce Wapen, MD, FACEP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

## CERTIFICATE OF SERVICE

I hereby certify that on 5/8/17, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following participants:

Rudy J. Verschoor    Rudy.J.Verschoor@usdoj.gov

Joseph Derrig     Joseph.Derrig@usdoj.gov

Amanda K. Thorsvig   Amanda@favros.com

Scott O' Halloran    Scott@favros.com


      s/Richard C. Eymann
     RICHARD C. EYMANN

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax