, EYMANN ALLISON HUNTER JONES, PS
By: Richard C. Eymann, WSBA #7470
2208 W. 2nd Avenue
Spokane, WA 99201
(509) 747-0101 Phone / (509) 568-5977 Fax
eymann@eahjlaw.com

LOWTHORP, RICHARDS, McMILLAN,
MILLER & TEMPLEMAN
John H. Howard, Bar #91027
300 Esplanade Drive, Suite 850, Oxnard, California 93036
(805) 981-8555 Phone / (805) 983-1967 Fax
jhoward@lrmmt.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERIC WRIGHT, INDIVIDUALLY AND IN HIS CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF STEVEN O. WRIGHT; AND, AMY SHARP, INDIVIDUALLY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; MEDFORD CASHION, M.D.; STAFF CARE, INC.,<br><br>Defendants. | No. 2:15-cv-00305-TOR<br><br>DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT |

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 1

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

BRONWEN F. O'NEILL, MSN RN-BC CMSRN PCCN NREMT swears under penalty of perjury as follows:

1. I am over the age of 18 years and competent to testify to the matters stated herein, and I make this Declaration based on personal knowledge.

2. The opinions expressed in this preliminary report are based on the accepted standard of care for nurses in the State of Washington and all of my findings are on a more probable than not basis. My opinions are based on my experience, both teaching and practicing, as a nurse in Washington State. My curriculum vitae is attached. I have reviewed the following records:

- Steven Wright's Mann-Grandstaff VA Medical Center medical records from August 2, 2014 (Spokane VAMC);
- Dr. Shea McManus' deposition transcript;
- Dr. Medford Cashion's deposition transcript;
- Elizabeth Ford's deposition transcript;
- Carla Linton's deposition transcript;
- Jill Palmer's deposition transcript;
- Matt Haugen's deposition transcript;
- Steven Wright's autopsy report;
- Robert Ready's deposition;
- Dr. Kimberly Morris' deposition

3. If additional relevant information becomes available, I reserve the right to revise my analysis and opinions.

\ \ \

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 2

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

## I. FACTUAL BACKGROUND

4. On approximately July 27, 2014, Steven Wright ("SW") fell down outside his home and onto his left knee which injured that knee. At the time of his fall, SW was taking Warfarin (an anticoagulant blood thinner) for chronic atrial fibrillation (Spokane VAMC pg. 18)[1]. Approximately one week later, on August 02, 2014, a friend drove SW to the Mann-Grandstaff VA Medical Center (Spokane VAMC pg. 25). According to VA medical records, SW presented to the Emergency Department with severe anasarca/edema, purplish discoloration and extensive ecchymosis in his left leg with 9/10 pain in that leg (Spokane VAMC pg. 16, 21). Dr. McManus, the attending ER physician, ordered x-rays of SW's chest and left leg. SW was then transferred into a wheelchair and his friend then transported him to the radiology department for a weight-bearing x-ray of his right knee but not of the left knee (Spokane VAMC pg. 25 33). Reasoning was not provided, but there was documentation that the patient was non-weight bearing on his injured left leg.

5. Dr. McManus ordered a Protime and International Normalized Ratio ("PT/INR"), which revealed that his INR was at a subtheraputic level of 1.5 (Spokane VAMC pg 46). SW's INR level and his leg injury made Dr. McManus

---

[1] Excerpts from the medical records referenced in this Declaration are attached as Exhibit "A" to the Declaration of Richard C. Eymann.

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 3

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

concerned about a possible deep vein thrombosis ("DVT"). (McManus Dep. Pg. 33). Dr. McManus ordered a 5mg oral dose of Warfarin and a 100mg subcutaneous injection of enoxaparin (an anticoagulant blood thinner) which Nurse Palmer administered (Spokane VAMC pg 17). He arranged for SW to be transported to Holy Family Hospital by ambulance on a stretcher to have an ultrasound performed of SW's left leg to determine if SW had a DVT. When SW returned from Holy Family Hospital Dr. McManus' shift had ended and ER physician Medford Cashion assumed SW's care. Dr. Cashion diagnosed SW as having a strain and contusion to his left knee (Spokane VAMC pg. 13). He discharged SW with a prescription for hydrocodone to use as necessary for the pain (Spokane VAMC pg. 17). Dr. Cashion instructed SW to continue to ice his knee and to use his knee immobilizer and his crutch(es) as the patient had been up in the ER walking with one crutch (Spokaen VAMC pg. 16).

6. According to Nurse Linton's deposition, she was at the nurse's station when SW was discharged. Nurse Linton stated that she offered to escort SW to his transportation in a wheelchair, but SW declined her offers and ambulated out of the Emergency Department on Canadian crutches without any assistance. (Linton Dep. pg. 14-15). SW fell in the hospital parking lot and hit his head on a wheelchair return rack or the pavement or both sometime before his

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 4

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

transportation arrived (Spokane VAMC pgs 1, 9). The fall caused an observable abrasion and/or laceration to SW's forehead. Nurse Haugen testified he was going off shift and exiting the hospital when he saw SW leaning up next to the wheelchair rack. He concluded SW was injured and put him in a wheelchair and wheeled him back inside the emergency department.

    7.    In the ER Nurse Ford and Dr. Cashion examined and treated SW for his head contusions. At some point during this treatment, Nurse Linton walked past the examining room and noticed the abrasion of SW's forehead. Nurse Linton testified that she went through the "chain of command" to Nurse Ford, who was also acting as the "Charge Nurse," and asked Nurse Ford if SW needed a CT scan because she was concerned about him suffering a head injury while on the blood thinner Warfarin (Linton Dep. pg 41-42). Nurse Ford testified that she also believed, in her professional opinion, that SW needed a CT scan and/or to be observed overnight. (Whitley-Ford Dep. pg. 53, 55, 62-63). However, Nurse Ford only asked Dr. Cashion about doing further testing. She admits she did not advise Dr. Cashion that SW needed additional testing. (Whitley-Ford Dep. pg. 55, 70). Nurse Ford also stated that she did not go to anyone higher up in the chain of command, such as the nursing supervisor or the chief of staff, to advocate for the care she thought SW should have had. (Whitley-Ford Dep. pg. 55-56, 71).

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 5

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

8. Subsequently, Dr. Cashion discharged SW from the emergency department for a second time, and reminded him to return for a follow up appointment on August 4, 2014 to further evaluate the injury to SW's knee and head wound. Dr. Cashion's records also references a CareNote, which is a brand of discharge instructions, but the CareNote has not been found by the hospital. (Spokane VAMC pg. 6). On the morning of August 3, 2014, SW was found in his home deceased. SW's autopsy report states the cause of death as a large acute subdural hematoma secondary to fall and anticoagulant medication.

## II. OPINION

### A. Karla Linton, LPN:

9. SW was a fall risk due to his health conditions and fall history. When SW presented to the hospital on August 2, 2014, he was unable to bear weight on his left leg, he was reportedly suffering from shortness of breath, an irregular heartbeat, and arthritis in both of his shoulders. SW was also 5'10" and 276 pounds which would have given him a body mass index ("BMI") of 39.6. (Spokane VAMC pg. 21). All of these conditions, in addition to the fact that he was 70 years old, would have affected his ability to ambulate safely on crutches without assistance. None of the treatment that SW received on August 2, 2014, would have improved his ability to ambulate safely although the dose of

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 6

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

intravenous Lasix (a diuretic) would likely have made an improvement in his shortness of breath.

10. All of SW's healthcare providers were capable of making accommodations for escorting SW safely upon discharge. When x-rays were ordered of his leg and chest, Nurse Palmer had SW transferred into a wheelchair and a friend escorted him to the x-ray suite. (Spokane VAMC pg. 25). When Dr. McManus ordered a doppler ultrasound of his left leg, SW was transferred to a stretcher to be transported in an ambulance. (Spokane VAMC pg. 28). However, Nurse Linton did not make similar accommodations for him when he was discharged, and SW ambulated out of the Emergency Department alone on crutches. Even though Nurse Linton was concerned that SW was a fall risk, and stated that she had escorted other patients to their transportation, Nurse Linton did not strongly encourage, or use her authority as a nurse to convince SW to be escorted in a wheelchair, or ask that he remain in the ER until his transportation arrived. (Linton Dep. pg. 15,17-18). Nurse Linton did not accompany SW to his transportation on discharge either. Nurse Linton merely offered to get SW a wheelchair, and then allowed SW who had difficultly ambulating, 9/10 left knee pain, knee stiffness, and bipolar disorder, decide whether he needed assistance. (*See* Spokane VAMC pg. 9, 28).

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 7

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

11. While nurses cannot force patients to consent to treatment, a nurse exercising reasonable care would have perceived SW ambulating out to his transportation alone as being risky and potentially unsafe and used her authority as a healthcare provider to assist the the patient with safe accommodations for him to get to his transportation. Even though the records indicate that SW did not follow all instructions, such as keeping his leg elevated on the stretcher, the medical records do not indicate SW was a difficult patient or unreasonable patient at all. The records indicate that SW was a compliant patient: he remained at the hospital for many hours to receive treatment, stayed until his treatment was completed (despite telling Nurse Ford he wanted to go home), agreed to be transported via gurney to and from a separate facility miles away, and agreed to be transported around the Emergency Department by wheelchair and stretcher. Therefore, Nurse Linton should have been able to work with and convince SW of a safe method of getting him to his transportation, either with a walking escort or via wheelchair, if she used her authority and skills as a nurse for safe patient care.

12. Given SW's health conditions and mobility issues, Karla Linton's actions fell below the acceptable standard of care on a more probable than not basis in the following respects. Karla Linton's efforts were insufficient and she should have done more than merely offer to take SW outside to his transportation

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 8

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

in a wheelchair. Nurse Linton should have used her skills and authority as a nurse and persuaded SW to allow assistance via wheelchair or had him remain in the ED until he could be assisted by the person who was arriving to take him home. A reasonable nurse then would have determined if SW's transportation was physically capable of accompanying and assisting him safely to the vehicle, and if that person were not capable of assisting him, the nurse would personally escort SW to his transportation or find another hospital employee who would escort the patient.

13.  In my opinion, based on a strong degree of medical certainty, SW would not have fallen down in the parking lot if he had been properly assisted to his transportation. Additionally, had Nurse Linton exercised her authority and skills as a nurse and encouraged SW to allow assistance to his transportation, I can say with a reasonable degree of medical certainty, he would likely would have agreed to being safely escorted to his friend's vehicle.

### B. Elizabeth (Whitley) Ford, RN:

14.  It is my professional opinion that nurses have the responsibility of being patient advocates and our nursing code of ethics requires this of us. Patients are not necessarily knowledgeable about appropriate medical treatments and can feel intimidated or embarrassed to ask for appropriate care or assistance.

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 9

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

Therefore, nurses have a duty to advocate for the appropriate care of a patient. SW was a male veteran who lived independently and he was still walking, as best he could, despite 9/10 left leg pain. On August 4, 2014, Nurse Whitley's actions fell below the appropriate standard of care on a more probable than not basis, because of her failures to advocate for SW's care. If a nurse is of the opinion that a patient's safety may be in jeopardy or is in jeopardy because of a lack of care that is being provided by a physician, the nurse should advocate for appropriate care and must go up the chain of command to ensure the patient's care.

15. Nurse Ford was aware that SW had suffered a fall with injury to his face and head while on Warfarin and Lovenox, and in her professional opinion, SW needed a CT scan of his head. However, Nurse Ford neither advocated to SW's physician, Dr. Cashion, to order a CT scan nor did she go through the hospital's chain of command to advocate for SW to receive the diagnostic testing required for his injuries. This patient suffered an obvious head trauma while on anticoagulants and appropriate care was not provided and Nurse Ford's advocacy efforts were minimal and insufficient. A head injury while on Warfarin can cause life threatening injuries, such as intracranial bleeding, which is a very well known risk. If a patient who is known to be taking anticoagulant medication fell and had an impact to their head, it is treated as a very serious condition by

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 10

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

healthcare providers and is given immediate treatment because the uncontrolled bleeding into and around the brain is a high risk of harm to the patient.

16. Nurse Ford needed to do more than ask Dr. Cashion about performing additional testing. Nurse Ford needed to work with Dr. Cashion as a patient advocate and explain why she thought further testing, including a CT scan of the head, was warranted, and if Dr. Cashion did not agree, she needed to go up the chain of command. In regards to her opinion that SW needed to be observed overnight, she needed also to express that opinion to Dr. Cashion, because it is her responsibility to advocate for SW's care. In my professional opinion, and based on my personal experience, it is very likely that a patient will receive the appropriate medical care and treatment if a nurse communicates with the physician and then goes to her superiors in the chain of command when needed. Therefore, I can say with a reasonable degree of medical certainty that if Nurse Ford had gone up the chain of command and advocated for appropriate treatment, SW would have received testing, such as a CT scan, as it was medically required

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 8th day of May, 2017, at Everett, Washington

*Bronwen F. O'Neill* MSN RN-BC
Bronwen F. O'Neill, MSN RN-BC CMSRN PCCN NREMT

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 11

EYMANN ALLISON HUNTER JONES P.S.
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on May 8, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following participants: |

Rudy J. Verschoor — Rudy.J.Verschoor@usdoj.gov

Joseph Derrig — Joseph.Derrig@usdoj.gov

Amanda Thorsvig — amanda@favros.com

Scott O' Halloran — Scott@favros.com

s/Richard C. Eymann
RICHARD C. EYMANN

DECLARATION OF BRONWEN O'NEILL IN OPPOSITION TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT - 12

**EYMANN ALLISON HUNTER JONES P.S.**
2208 West Second Avenue
Spokane, WA 99201-5417
509-747-0101 / 509-458-5977 fax