1  RICHARD C. EYMANN
   Eymann Allison Hunter Jones P.S.
2  2208 West Second Avenue
3  Spokane, WA 99201
   (509) 747-0101
4  (509) 458-5977 (fax)
5
   JOHN H. HOWARD, *Pro Hac Vice*
6  Lowthorp, Richards, McMillan,
7  Miller & Templeman
   300 Esplanade Drive, Suite 850
8  Oxnard, CA 93036
   (805) 981-8555
9  (805) 983-1967 (fax)
10
   Attorneys for Plaintiffs
11

12          **UNITED STATES DISTRICT COURT FOR THE**
13               **EASTERN DISTRICT OF WASHINGTON**
14

| | |
|---|---|
| 15  ERIC WRIGHT, INDIVIDUALLY | No. 2:15-cv-00305-TOR |
| 16  AND IN HIS CAPACITY AS | |
| 17  PERSONAL REPRESENTATIVE OF | |
|     THE ESTATE OF STEVEN O. | **PLANTIFFS** |
| 18  WRIGHT; AND, AMY SHARP, | **STATEMENT OF** |
|     INDIVIDUALLY, | **MATERIAL FACTS** |
| 19                   Plaintiffs, | **PURSUANT TO LOCAL** |
| 20  v. | **RULE 56.1** |
| 21 | |
|     THE UNITED STATES OF | |
| 22  AMERICA; MEDFORD CAHION, | |
| 23  M.D.; STAFF CARE, INC. | |
| 24                  Defendants. | |

25
26
27
28  PLANTIFFS STATEMENT OF
   MATERIAL FACTS PURSUANT
   TO LOCAL RULE 56.1 - 1

Pursuant to Local Rule 56.1(b), Plaintiffs submit the following statement of material facts in response to Defendant United States' motions for summary judgment. Plaintiffs additional factual statements start at number 100.

100. Dr. McManus described Steven Wright's mobility on August 2, 2014, as being unsteady. (McManus pg 31:8-10)

101. Dr. McManus was concerned about Steven Wright walking. (McManus pg 32:16-18)

102. Dr. McManus' plan was to have Steven Wright admitted to the hospital regardless of the results of his MRI at Holy Family Hospital. (McManus 44:10-16).

103. Karla Linton considers a patient on crutches who is at the hospital with a leg injury to be a fall risk. (Linton 18:17-21).

104. Karla Linton does not remember the wording of how she approached the subject of providing Steven Wright with a wheelchair on August 2, 2014. (Linton 19:13-16).

105. Karla Linton stated that she had the authority as a nurse to not merely offer Steven Wright a wheelchair, but to tell Mr. Wright "for your own safety, it's necessary that I put you in a wheelchair to get you to your vehicle." (Linton 20:18-21).

106. Karla Linton did not see Mr. Wright's transportation at the time the patient left the emergency room. (Linton 23:7-10)

DECLARATION OF RICHARD C. EYMANN IN SUPPORT OF
MOTION FOR LEAVE OF COURT TO FILE AMENDED
COMPLAINT FOR DAMAGES - 2

107. Jill Palmer stated that she can order an x-ray before a patient is seen by a physician. (Palmer 10:3-6).

108. Steven Wright was taken by wheelchair to have x-rays performed of his chest and knee, but not all patients are taken by wheelchair to have x-rays taken. (Palmer Dep. 47:19-21)

109. Dr. Cashion reminded Steven Wright to return to his follow up appointment for on August 4, 2014, because he felt that the friends and caregiver that were available to assist Steven Wright were insufficient for his head injury. Dr. Cashion stated that Steven Wright's support system was insufficient because his head injury needed "close following." (Cashion Dep. 42:12-22).

110. Dr. Cashion did not recommend that Steven Wright have a CT scan. (Cashion Dep. 52:12-13).

111. Steven Wright was unable to bear weight on his left knee (VAMC Med Recs pg. 29; Cashion 66:8-11).

112. Dr. Cashion also stated that Steven Wright "had pain with walking, and he did not walk for me because he was in pain in that knee." (Cashion 2:14-16).

113. Karla Linton did not document offering Steven Wright a wheelchair in the medical records. (VAMC pg. 28).

114. Karla Linton stated at the time of her deposition that her interaction with

DECLARATION OF RICHARD C. EYMANN IN SUPPORT OF
MOTION FOR LEAVE OF COURT TO FILE AMENDED
COMPLAINT FOR DAMAGES - 3

Steven Wright happened some time ago and that she treats a lot of patients. (Linton Dep. 11:21-24).

115.  Karla Linton stated that she performed neuro exams on patients when she was working at Deaconess Medical Center. (Linton 47:9-15).

116.  Nurses at the VA Hospital are expected to go up the chain of command if a physician was not doing something that they should do. (Ready Dep. 64:23-65:2).

117.  Elizabeth Ford stated that in her opinion Steven Wright should have had a CT scan. (Whitley-Ford 53:18-24).

118.  Elizabeth stated in her opinion Steven Wright should have been watched overnight. (Whitley-Ford 62:16-25).

119.  After hitting his head in the parking lot, Steven Wright was only in the ER for a brief time period.  (Whitley-Ford 57:11-12).

120.  When Matt Haugen found Steven Wright he seemed unclear about his situation. (Haugen Dep. 12:9-15).

121.  Dr. Cashion stated that Steven Wright was limping and in pain. (Cashion Dep. 49:13-14).

122.  When Dr. Cashion found that all of Steven Wright's extremities worked within normal limits he was taking into account that one of his legs was injured. (Cashion Dep. 49:2-5)

123. Dr. Cashion determined that Steven Wright's extremities worked within normal limits, taking into account his injuries, by observing how Steven Wright's extremities when he was laying on the stretcher. (Cashion Dep. 49:8-16).

124. When Elizabeth Ford found that all of Steven Wright's extremities worked within normal limits she was taking into account that one of his legs was injured. (Whitley-Ford Dep. 59:7-9).

125. The VA hospital expects nurses in the ER act as reasonably prudent healthcare providers under the circumstances. Nurses are expected to go up the chain of command, even without a written policy, by virtue of being nurses. (Ready Dep. 64:6-9).

126. In the Emergency department of the VA hospital an ESI of level 4 means a patient only requires one resource. (Ready Dep. 38:12).

127. There is no protocol or procedure of escorting patients to their transportation. (Ready Dep. 23:19-23).

128. Dr. Cashion noted that he began treating Steven Wright for his head injury at 8:43 pm. (Spokane VAMC pg 9).

129. Dr. Cashion discharged Steven Wright at 8:52 pm. (Spokane VAMC pg 8).

130. Dr. Cashion did not order a CT scan (Cashion Dep. 67:8-12).

131. Dr. Cashion did not request overnight observation for Steven Wright.

DECLARATION OF RICHARD C. EYMANN IN SUPPORT OF
MOTION FOR LEAVE OF COURT TO FILE AMENDED
COMPLAINT FOR DAMAGES - 5

(Cashion Dep. 66:15-16).

DATED this 8th day of May, 2017.

EYMANN ALLISON HUNTER JONES P.S.

s/ Richard C. Eymann
RICHARD C. EYMANN, WSBA #7470
Attorneys for Plaintiffs

DECLARATION OF RICHARD C. EYMANN IN SUPPORT OF
MOTION FOR LEAVE OF COURT TO FILE AMENDED
COMPLAINT FOR DAMAGES - 6

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following participants:

| | |
|---|---|
| Rudy J. Verschoor | Rudy.J.Verschoor@usdoj.gov |
| Joseph Derrig | Joseph.Derrig@usdoj.gov |
| Amanda Thorsvig | amanda@favros.com |
| Scott O' Halloran | Scott@favros.com |

s/Richard C. Eymann
RICHARD C. EYMANN