# Exhibit I

000090

**In the Matter Of:**

*ERIC WRIGHT vs*

*UNITED STATES*

*SHEA MCMANUS, M.D.*

*October 03, 2016*

# SPOKANE REPORTING SERVICE, INC.

800-759-1564

*www.spokanereporting service.com*

```
 1   Q   Is that noted anywhere in your records?
 2   A   I don't recall.
 3   Q   You don't recall?
 4   A   I can look, sir.
 5   Q   Please look.
 6           (Pause to Review Document.)
 7   A   I don't see any note of that.
 8   Q   How would you describe Mr. Wright's mobility on
 9   August 2nd, 2014, when you examined him?
10   A   Unsteady.
11   Q   Was he a fall risk?
12   A   Possibly.
13   Q   Did you provide Mr. Wright with any instructions to
14   lessen his fall risk, whether it was possible or not?
15   A   Yes.
16   Q   What did you specifically tell him?
17   A   "Stay on the stretcher."
18   Q   Was he transferred for the x-rays on the stretcher,
19   to your knowledge?
20   A   I don't recall.
21   Q   Whose responsibility is it to determine how he's
22   transferred from the VA Hospital to Holy Family Hospital
23   insofar as the type of transportation and whether he's on
24   a stretcher or in a wheelchair or walking?
25           MS. MITCHELL:  Just a point of clarification,
```

509-624-6255                SPOKANE REPORTING SERVICE, INC.  421 W. Riverside Avenue, #1010
800-759-1564                www.spokanereporting service.com              Spokane, WA  99210

000092

```
 1   are you talking about the x-rays that he had of his leg
 2   at the VA or the imaging studies that he had at Holy
 3   Family?  I'm getting confused.
 4              MR. EYMANN:  Good -- good question, counsel.
 5   Q   (By Mr. Eymann)  Okay.  In either situation, were you
 6   the one who decided whether he would be transferred by
 7   stretcher, wheelchair or walking?
 8   A   I don't recall.  I don't know whose responsibility it
 9   is.
10   Q   Well, typically in the hospital setting, when you're
11   seeing someone like Mr. Wright for the complaints that he
12   had, is that a physician decision or is that a nurse
13   decision or --
14   A   My choice was by stretcher and ambulance to and from
15   Holy Family.
16   Q   Can I conclude from that that you had some concern
17   then about him walking?
18   A   Yes.
19   Q   And that was because you considered him being a fall
20   risk; is that correct?
21              MR. VERSCHOOR:  Just object.  Misstates his
22   testimony.
23   A   Not necessarily the only reason.
24   Q   (By Mr. Eymann)  Well, if there were other reasons,
25   what would the other reasons have been?
```

509-624-6255                SPOKANE REPORTING SERVICE, INC.  421 W. Riverside Avenue, #1010
800-759-1564               www.spokanereporting service.com              Spokane, WA  99210

000093

```
 1   A    Dislodgement of a DVT.
 2   Q    And the acronym you just used is what?
 3   A    Deep venous thrombosis.
 4   Q    And so you were concerned that a clot could be --
 5   would go to the lung; is that correct?
 6   A    Possibly, yes.
 7   Q    Are you acquainted with the medication Enoxaparin?
 8   A    In what sense?
 9   Q    Well, did you have that administered to Mr. Wright,
10   I'll start with that, on August 2nd, 2014?
11   A    Yes.
12   Q    And what was the reason for it?
13   A    Sub-therapeutic INR, concern for DVT, atrial
14   fibrillation.
15   Q    Are you acquainted with any of the side effects of
16   that particular medication?
17   A    Hypercoagulable state from ureteral cancer.
18   Q    Any others --
19   A    (Shakes head).
20   Q    -- that you're aware of --
21   A    No.
22   Q    -- from either your memory or from the medical
23   records?
24   A    I'd like to go back.  I don't think you --
25              Your question was about, I'm sorry, Lovenox.
```

509-624-6255           SPOKANE REPORTING SERVICE, INC.  421 W. Riverside Avenue, #1010
800-759-1564           www.spokanereporting service.com           Spokane, WA  99210

000094

```
 1   A    The patient went to Holy Family.
 2   Q    Did you meet with him when he was returned from Holy
 3   Family?
 4   A    No.
 5   Q    Do you remember having any discussion with him before
 6   he went to Holy Family that when he came back he was
 7   going to be admitted to the hospital?
 8   A    Yes.
 9   Q    Why didn't you admit him to the hospital before he
10   left to go to Holy Family?
11   A    Because if he has a DVT I need to know.  And the
12   hospitalist would not admit him to the hospital unless he
13   had that evaluation prior to the admission process.
14   Q    When he returned, was the DVT concern positive or
15   negative?
16   A    I don't know.  I was gone.
17   Q    I note that on the page 24 that Dr. Medford Cashion
18   acknowledged your entry above that; is that correct?
19   A    He acknowledged my whole note.
20   Q    All right.  At any time that day did you have any
21   verbal discussions with Dr. Cashion about what you wanted
22   to do with Mr. Wright insofar as admission or discharge?
23   A    Yes.  In addition to a written electronic note
24   transfer hand off, I had a verbal hand off with Dr.
25   Cashion as well, which is protocol for any ER physician
```

509-624-6255                SPOKANE REPORTING SERVICE, INC.  421 W. Riverside Avenue, #1010
800-759-1564                www.spokanereporting service.com              Spokane, WA  99210

000095

```
 1   or any physician in any hospital --
 2   Q   Do you remember --
 3   A   -- setting.
 4   Q   -- what you told Dr. Cashion?
 5           MS. MITCHELL:  Can you let him finish his
 6   answer?  If you were done.
 7   Q   (By Mr. Eymann)  I'm sorry.
 8   A   I told Dr. Cashion my findings, my concerns and my
 9   plan for admitting Dr. -- Mr. Wright to the hospital for
10   further evaluation and management.
11   Q   Was your plan to admit dependent upon the results
12   coming back from Holy Family for DVT concern?
13   A   No.
14   Q   So your plan was to admit him regardless; is that
15   correct?
16   A   Yes.
17   Q   And is it my understanding that as far as you knew
18   Dr. Cashion agreed with that plan?
19           MR. O'HALLORAN:  Object to the form.
20   A   Dr. Cashion made it clear that he understood what I
21   was telling him and accepted the patient's care from me.
22   Q   (By Mr. Eymann)  Did you have any discussions with
23   any of the nurses regarding these issues?
24   A   Which issues?
25   Q   Well, the issues of whether he would be admitted or
```

509-624-6255                SPOKANE REPORTING SERVICE, INC.  421 W. Riverside Avenue, #1010
800-759-1564                www.spokanereporting service.com               Spokane, WA  99210

000096